Grace **BOLANDER**, Appellant,

v.

**CITY OF GREEN CITY**, Respondent.

**No. WD 57984.**

Missouri Court of Appeals,
Western District.

Nov. 14, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 2000.

Application for Transfer Denied
Feb. 13, 2001.

**14.** *See* Alfred S. Neely, 20 Missouri Practice, Administrative Practice and Procedure, § 7.20 (2d ed. Supp.2000).

Frederick Gregg Thompson, Kansas City, for appellant.

Patrick Eugene Richardson, Green City, for respondent.

Before Presiding Judge EDWIN H. SMITH, Judge ELLIS and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Plaintiff–Appellant Grace Bolander appeals the trial court's dismissal of her petition to enjoin Respondent, City of Green City, Missouri, from condemning and demolishing Ms. Bolander's house pursuant to local ordinances. Ms. Bolander contends that the trial court erred in rendering its decision in several respects. First, she asserts that the trial court erred in allowing her attorney to withdraw from the case in August 1999, because he failed to comply with two aspects of a local rule governing withdrawal. Because we find that both variances from the local rule were technical only, and that they did not affect the court's resolution of the case or Ms. Bolander's ability to protect her interests, we do not agree that these errors require reversal of the court below's decision to allow counsel to withdraw.

Next, Ms. Bolander contends that the trial court erred in denying her request for a continuance of an October 29, 1999, hearing, because the evidence showed that she had only learned five days previously that her original counsel had withdrawn from the case the prior August, that the court had entered an order enforcing the settlement agreement, and that a hearing to review her compliance with the agreement was scheduled for that day. Because the evidence shows that Ms. Bolander's lack of notice was due to her failure to check her mail for over two months rather than due to her counsel's failure to send her adequate notice of the October hearing, and because she made only an oral request for a continuance rather than a written one as required by Rule 65.03, we find no error in denying the motion for continuance.

Finally, Ms. Bolander contends that the trial court erred in enforcing the parties' alleged oral settlement agreement and argues that the court did not have a basis to believe that her counsel had the authority

to bind her to that agreement. As Ms. Bolander failed to provide us with a transcript of the hearing at which the court considered this issue, the record does not permit us to reach the merits of this allegation of error. In any event, she failed to present evidence below that her attorney lacked apparent authority to settle on her behalf. For all of these reasons, we affirm the judgment below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The evidence in the record, considered in a light most favorable to the decision below, is as follows:

For approximately six years prior to 1999, Ms. Bolander was involved in continuing proceedings with Green City, Missouri, concerning a building she owned in that city. Green City notified her many times that her building failed to conform to local ordinances, and that she needed to take corrective measures or the building would be destroyed. Apparently, Ms. Bolander made repeated promises to cure the building's structural deficiencies, but never did so.

On February 2, 1998, Green City finally ordered Ms. Bolander to demolish her building. Soon thereafter, Ms. Bolander's attorney, Mr. Seth Shumaker, contacted Green City and questioned the validity of its action in ordering the demolition of Ms. Bolander's building. Green City agreed to withhold further action pending a suit by Ms. Bolander to obtain a judicial determination of the validity of the City's order. On March 30, 1999, Ms. Bolander filed suit seeking injunctive relief from the order to demolish her building, and the matter was set for trial on June 14, 1999.

The scheduled June 14, 1999, trial on Ms. Bolander's petition did not occur. Instead, after conducting discovery concerning the nature of the violations, the parties engaged in settlement negotiations. During these negotiations, Ms. Bolander's counsel requested that she be allowed to attempt to repair her building in order to bring it into conformity with local codes, and to avoid further litigation on the merits of her petition for injunctive relief. The City provided a list of remedial measures that needed to be completed for the rehabilitation of the building, and suggested that they be performed in two stages, with 30–day and 60–day deadlines. Ms. Bolander requested that she be given 45 days to complete each stage, for a total of 90 days. Ultimately, on June 11, 1999, Green City agreed to grant Ms. Bolander 60 days to complete each stage, thus giving her a total of 120 days to bring the building into compliance with local ordinances. Counsel for Ms. Bolander orally agreed to this schedule on behalf of Ms. Bolander, apparently with her consent, and the parties orally agreed that the case would be scheduled for review before the Honorable James P. Williams 60 days later, and again 120 days later, to determine Ms. Bolander's compliance with the agreement. Although the settlement agreement was reduced to writing, it was never signed by the parties.

While there is no formal notation in the record specifically explaining exactly why the June 14, 1999, trial date was set over or why a review hearing was set for August 11, 1999, the record shows that in fact these two events occurred. On August 11, 1999, 60 days after the oral agreement to settle, both counsel appeared before Judge Williams. Green City moved for enforcement of the settlement agreement, and Mr. Shumaker, counsel for Ms. Bolander, consented to the court's entry of an order enforcing the agreement. The court ordered that the parties perform the terms of the agreement. He set August 11, 1999, as the effective date for the beginning of the 120 day period for compliance, however, and set the case for an approximately "60 day" review and hearing, in accordance with the agreement, on October 26, 1999.

On August 16, 1999, five days after the hearing on the settlement agreement, Mr. Shumaker filed a motion to withdraw as

attorney of record for Ms. Bolander. He indicated, as grounds for his withdrawal, that Ms. Bolander had expressed dissatisfaction with his representation in the matter, that she had been uncooperative in his efforts as her counsel, and that she had failed to maintain contact with him after repeated efforts on his part to contact her. He set his motion for hearing on August 23, 1999, and filed a certificate of service of notice of that hearing to Ms. Bolander, reflecting that Ms. Bolander had been mailed accurate copies of the documents, although the certification did not set forth Ms. Bolander's address as required by Local Rule 21.4.

Ms. Bolander did not appear at the August 23, 1999, hearing. A copy of the transcript of that hearing has not been provided to us, but the record shows that, following the hearing, the court granted Mr. Shumaker leave to withdraw as Ms. Bolander's counsel. Local Rule 21.4 required Mr. Shumaker to notify his client in writing that the court had granted his motion to withdraw as her counsel, to inform her of pending court dates, and to file a copy of that letter with the clerk. No copy of any such letter was filed with the clerk, however. Nonetheless, Ms. Bolander appeared at the courthouse on the scheduled hearing date, October 26, 1999, without counsel, and the clerk informed her that the case had been continued to October 29, 1999. Ms. Bolander requested a copy of her case file and received it from the clerk.

Ms. Bolander appeared on October 29, 1999, again without counsel. She immediately made an oral motion for a continuance so that she could enlist the aid of another attorney, indicating that she had been in contact with a new counsel, but that he was not available that day. The court asked her when she became aware that Mr. Shumaker was no longer representing her. A review of the transcript reveals some measure of confusion at this point between the court and Ms. Bolander. Ms. Bolander answered the court: "I didn't get a letter from him until just a couple of days before I came up here ... It was on the Saturday before the 26th," meaning, from later context, *October* 26. Due to ambiguity in her language, however, at least at first the court believed she was claiming she learned of the withdrawal shortly before *August* 26. Later, Ms. Bolander tried to clarify her earlier statement, indicating to the court that she was aware that Mr. Shumaker no longer represented her on "[t]he Saturday before—the 26th of October." It is not clear that the court either heard or understood Ms. Bolander's clarification at that point, but it nonetheless permitted Ms. Bolander to later further explain the reason why she did not have counsel. She explained the reason for her lack of counsel was that she seldom checked her mail since she paid her bills months in advance, and thus did not receive monthly bills. As it happened, she said, she had not checked her mail between August and late October of 1999. She said she only checked her mail then because a workman at her property had told her that he had heard that her case was scheduled for trial for the next week. That was when she first learned of the October 26, 1999, trial setting and that Mr. Shumaker was no longer her counsel.

The court clearly did not accept Ms. Bolander's explanation as a valid reason for continuing the case. He informed Ms. Bolander that he had "the distinct impression" that she was trying to "delay the matter," and that the court would, that day, commence to receive evidence on the merits. The court then advised Ms. Bolander that she would have the right to appeal its decision to proceed, and allowed Green City to present its evidence. Ms. Bolander cross-examined but repeatedly expressed uncertainty as to how to do so effectively. She also presented the testimony of Edward Dixon, a neighbor who was helping her to cure the deficiencies in her home, who testified as to partial work that had already been done on the home. He testified that the roof had been re-

placed, some of the exterior of the home had been painted, and some of the foundation had been replaced. During the City's cross-examination of Mr. Dixon, however, he conceded that there was still much work to be done on the home, and it was evident that Ms. Bolander had failed to comply with all of the requirements of the settlement agreement. Ms. Bolander herself also testified, presenting evidence of materials she bought to improve the home, and of physical ailments that prevented her, at times, from personally working on the home.

After the hearing, the court found that Ms. Bolander had failed to comply with the court-ordered settlement agreement, denied the injunctive relief sought in her petition (which meant that the demolition could proceed), and entered judgment and costs in favor of Green City. This appeal follows.

## II. STANDARD OF REVIEW

■ Because this is a court-tried case, the trial court's action will be affirmed unless there is no substantial evidence to support it, unless it was against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Endsley v. Director of Revenue,* 6 S.W.3d 153, 157 (Mo.App. W.D.1999).

## III. PERMISSION TO WITHDRAW

■ In Ms. Bolander's first point on appeal, she alleges error in the trial court's ruling giving her attorney permission to withdraw in August 1999. She argues counsel did not comply with the requirements of Sullivan County Local Rule 21.4 in giving her notice of the withdrawal hearing or of the court's subsequent order approving counsel's withdrawal in that counsel did not include her address in the certification of service to the motion, and did not thereafter file with the court a copy of a letter informing her of the court's ruling.

Local Rule 21.4 of Sullivan County, Missouri, governs procedures for attorney withdrawal and requires in pertinent part:

> The last known address of the client from whose employ that attorney is seeking leave to withdraw shall be plainly set out in the motion or the certificate of service thereon ... If the client fails to appear, and if the attorney is granted leave to withdraw, the attorney shall immediately notify his former client by letter of the attorney's withdrawal and shall send a copy of the letter to the clerk. Such letter shall advise the former client of any scheduled court proceedings or pleading deadlines in the case.

**Local Rule 21.4.**

The record in this case includes both Mr. Shumaker's motion to withdraw and a notice of the hearing on his motion to withdraw, both of which contain certificates of service. The certificates indicate that an accurate copy of both the motion and the notice were mailed to "Grace Bolander, Petitioner." Neither certificate contains Ms. Bolander's last known address. Thus, technically, the requirement to list the client's last known address was not complied with. No specific prejudice is alleged to have resulted from this failure, however, and we can see none. The only apparent purpose of Rule 21.4's requirement that an address be set forth in the certificate of service is so the court has a correct address at which to contact the soon-to-be unrepresented party. The court never attempted to contact Ms. Bolander, however. Moreover, Ms. Bolander does not claim that counsel's notice of intent to withdraw was sent to the wrong address. Rather, the record reflects Ms. Bolander's admission that it was due to her own neglect—i.e., her failure to regularly check her mail—that she did not receive the notice of Mr. Shumaker's intended or completed withdrawal until a few days before the hearing scheduled for October 26, 1999. Ms. Bolander offers no

evidence of prejudice due to the failure to list her last known address in the motion or certificate, or any other reason why this omission should have resulted in denial of Mr. Shumaker's motion to withdraw. Ms. Bolander has pointed us to no cases in which such an omission provided a basis for reversal. We decline to reverse on this basis.

Ms. Bolander also notes that Mr. Shumaker did not send the clerk of the circuit court a copy of the letter he sent to Ms. Bolander after withdrawal was granted, informing her of his withdrawal from the case and of pending court dates, as required under Local Rule 21.4. This failure is more serious, in that the purpose of this requirement was clearly to ensure that the client received adequate notice of the need to get a new attorney and to appear at any later scheduled hearing. It is evident that, if no notice were given, a client could be prejudiced at any later hearing, if it turned out that the client, as a result, was unaware of the hearing or of the need to hire new counsel.

In Point I, however, Ms. Bolander argues that the failure to send the client a copy of this notice caused the court below to err in granting Mr. Shumaker *permission to withdraw*. We fail to follow this argument, for any failure to give the required notice that Mr. Shumaker had been permitted to withdraw obviously could not have occurred until *after* Mr. Shumaker's motion to withdraw had been granted. It therefore does not support an argument that the court erred in permitting the withdrawal, for it could not retroactively invalidate a previously valid order permitting withdrawal. This claim of error is more logically relevant to Ms. Bolander's claim in Point II that she had insufficient notice of the October 1999 hearing, and that the court below therefore erred and abused its discretion in failing to grant her a continuance, and will be further addressed in that context.

■ In Part B of Ms. Bolander's first point, she suggests, in the alternative, that the trial court abused its discretion in granting her prior counsel's motion to withdraw because substantial evidence was not introduced at the August 23, 1999, hearing on the motion to withdraw to support the allegations underlying the motion. We cannot review this point, for Ms. Bolander has failed to provide us with a transcript of the hearing. It is an appellant's duty to provide a full and complete record on appeal. *Brancato v. Wholesale Tool Co., Inc.*, 950 S.W.2d 551, 554 (Mo. App. E.D.1997). "If a matter complained of is not present in the record on appeal, there is nothing for the court to review." *Id.* Without a record of the evidence necessary to the determination of all questions presented, "we cannot rule with any degree of confidence in the reasonableness, fairness, and accuracy of our final conclusion[s]." *Id.* We therefore cannot determine that the lower court's decision to grant Mr. Shumaker's motion to withdraw was not well-founded.

■ Further, Ms. Bolander claims that the court should have realized that the basis of its order enforcing the settlement agreement between the parties was undermined by the fact that, five days later, counsel said he should be permitted to withdraw because he had not been in contact with his client. This might be a concern had counsel claimed at the August 11, 1999, settlement hearing that he and his client had recently discussed the settlement. On the facts of this case, however, there is no logical inconsistency between Mr. Shumaker's stipulation to the settlement on August 11, 1999, and his allegation on August 16, 1999, that he had not had contact with Ms. Bolander in quite some time. The oral settlement agreement had allegedly been reached by the parties on June 11, 1999, with Ms. Bolander agreeing to adhere to a 120–day rehabilitation schedule to bring her building into conformity with local ordinances. This occurred 60 or more days before either hearing in August 1999. Thus, there was a period of approximately two months

from the time that the oral settlement agreement was allegedly reached by the parties until Mr. Shumaker's withdrawal during which Mr. Shumaker could have tried unsuccessfully to contact Ms. Bolander. Moreover, as we are not provided with a transcript of either the August 11, 1999, or August 23, 1999, hearings, we do not know whether these issues were in fact discussed at these hearings and resolved to the satisfaction of the trial judge. For these reasons, we reject Part B of Point I also.

## IV. DENIAL OF CONTINUANCE

██ Ms. Bolander alleges, in her second point, that the trial court erred in denying her oral motion for a continuance of the October 29, 1999, hearing that had been scheduled to review her compliance with the settlement agreement. Again, she claims that because she had inadequate notice of this hearing she was unable to prepare for it or retain new counsel, and for this reason the court abused its discretion in failing to grant her a continuance.

██ Because a trial judge is responsible for controlling his or her docket and the progress of litigation, the grant or refusal of a continuance is a matter largely left to the sound discretion of the trial court. *Commerce Bank of Mexico, N.A., v. Davidson,* 667 S.W.2d 474, 476 (Mo.App. E.D.1984). "This discretion necessarily is broad; on appeal the trial court's decision is given every possible intendment and will not be set aside unless shown to be abused by arbitrary or capricious exercise." *Id.* Thus, Ms. Bolander bears a substantial burden to successfully prove that the trial court abused its discretion in this regard.

██ Supreme Court Rule 65.03 requires that an application for continuance be made in writing, "accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents...." Rule 65.03. *See Commerce Bank of Mexico,*

*N.A.,* 667 S.W.2d at 476. Ms. Bolander's oral motion for a continuance of the October 29, 1999, hearing clearly failed to comply with Rule 65.03. As she notes, she was not represented by an attorney and did not know of this rule. On the other hand, the requirement that a motion be in writing is not a sophisticated or complex requirement, and "a pro se litigant is held to the same standard as a licensed attorney" in regard to such requirements. *Mills v. Mills,* 939 S.W.2d 72, 74 (Mo.App. W.D. 1997). *Mills* expressly held that, even if the litigant who fails to comply with the requirements of Rule 65.03 is unaided by counsel, "[w]ithout compliance with the requirements of the rule, no abuse of discretion can result in denying a continuance." *Id.* Therefore, because Ms. Bolander failed to submit her application for continuance in writing, with accompanying reasons in support, precedent would support our holding that the trial court's denial of a continuance was not an abuse of discretion.

Ms. Bolander argues that an exception to this rule should be made here because, as noted above, the record contains no copy of a letter to the clerk showing that counsel sent Ms. Bolander notice of the order permitting withdrawal and notifying her of the October 1999 hearing date. Ms. Bolander does not deny, however, that her counsel sent her notice of the withdrawal and hearing. To the contrary, when she told the court at the hearing on October 29, 1999, that she "didn't get a letter from him [Mr. Shumaker] until just a couple of days before I came up here," she implicitly admitted that the required letter had been sent by Mr. Shumaker and received by her when she checked her mail for the first time in over two months, after being told by a workman at her building that her case was set for hearing.

██ Based on this evidence, the court did not err in concluding that Ms. Bolander's lack of preparation for the October 29, 1999, hearing was caused by her own culpable neglect. While it is true that an attorney must give his or her client rea-

sonable notice of his withdrawal from representation, *see Herrin v. Straus,* 810 S.W.2d 593, 596 (Mo.App. S.D.1991), it is the duty of every litigant to follow the progress of his or her lawsuit, and to keep abreast of the proceeding. *Id.* Here, the evidence supports the inference that notice of the withdrawal and of the October 26, 1999, hearing was sent to Ms. Bolander, but that it sat in her mailbox, unread, for months, despite the fact that she knew that suit had been filed on her behalf, that a settlement had been agreed to, and that resolution of the suit was pending. Thus, the court could well have concluded that her failure to have counsel at the hearing was the result of her own culpable neglect. On these facts, denial of the oral motion for continuance was not error.

## V. ENFORCEMENT OF SETTLEMENT AGREEMENT

■ In her third point, Ms. Bolander alleges that the trial court abused its discretion in finding at the August 11, 1999, hearing that the parties had agreed to a settlement, and in ordering that agreement enforced, in that there was no substantial evidence that she had ever executed such an agreement, and in that her attorney lacked authority to consent to an order enforcing its terms. As noted above, however, she has failed to provide us with a transcript of the August 11, 1999, proceeding. She thereby leaves us no means by which to assess whether the trial court had an adequate basis to conclude that counsel had her authority to enter into the settlement agreement. *See Brancato,* 950 S.W.2d at 554.

■ In any event, we note that "[a] party who contends that an attorney lacked authority to bind him [or her] in a particular way bears a heavy burden." *Jacobs v. Georgiou,* 922 S.W.2d 765, 770 (Mo.App. E.D.1996). While there is no implied authority for attorneys to settle cases on behalf of their clients, "in cases where an attorney represents that he or she has authority from the client to accept a settlement offer, and did reach an agreement with the other party's counsel to settle, Missouri courts have placed a substantial burden on the client to disprove his own attorney's authority if the client wishes to avoid the settlement." *Southwestern Bell Yellow Pages, Inc. v. Dye,* 875 S.W.2d 557, 561 (Mo.App. E.D.1994). In fact, "[o]nly where the trier of fact has been convinced that authority to settle was truly lacking, or where the evidence has been deemed insufficient to raise the presumption of attorney authority, have our courts allowed clients to avoid or attempt to avoid settlements concluded by their attorneys." *Id.* at 562.

■ In this case, Ms. Bolander has presented no evidence of any irregularity that would tend to undermine the trial court's confidence in the apparent authority of Mr. Shumaker to consent to entry of a judgment on August 11, 1999, based on the settlement agreement with Green City. While Mr. Shumaker did indicate later in August 1999, when he moved to withdraw as Ms. Bolander's counsel, that he had had some difficulty in contacting Ms. Bolander, evidence was presented that the oral settlement agreement was entered into by the parties on June 11, 1999. Thus, as noted earlier, the fact that counsel said he had not had contact with Ms. Bolander for some time is not inconsistent with the finding that Mr. Shumaker had her authority in June 1999 to consent to the settlement agreement.

■ Further, Ms. Bolander's argument that the settlement agreement had to be signed to be effective is not correct. Settlement agreements are governed by the law of contracts, and a settlement agreement does not have to be in writing unless the subject matter is within the statute of frauds. *B–Mall Co. v. Williamson,* 977 S.W.2d 74, 77 (Mo.App. W.D. 1998). Accordingly, assuming there has been a meeting of the minds, oral settlement agreements may be enforced. The

court below did not err in enforcing the agreement at issue here.

For all of the reasons set out above, the judgment is affirmed.

Presiding Judge EDWIN H. SMITH, and Judge ELLIS, concur.